**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**KATHLEEN B.,**

**Plaintiff,**

                                                              **Case No. 1:19-cv-01551-TPK**

       **v,**

**COMMISSIONER OF SOCIAL**                    **OPINION AND ORDER**
**SECURITY,**

**Defendant**.

## OPINION AND ORDER

        Plaintiff Kathleen B. filed this action under 42 U.S.C. §405(g) asking this Court to review
a final decision of the Commissioner of Social Security.  That final decision, issued by the
Appeals Council on September 18, 2019, denied Plaintiff's applications for social security
disability benefits and supplemental security income.  Plaintiff has now moved for judgment on
the pleadings (Doc. 7), and the Commissioner has filed a similar motion in response (Doc. 11).
For the following reasons, the Court will **GRANT** Plaintiff's motion, **DENY** the
Commissioner's motion, and remand this case to the Commissioner pursuant to 42 U.S.C.
§405(g), sentence four.

## I.  BACKGROUND

        Plaintiff was 49 years old when she protectively filed her applications for benefits on July
21, 2016 and August 2, 2016.  Plaintiff alleged that she became disabled on August 2, 2016.
After initial administrative denials of her claim, Plaintiff appeared at an administrative hearing
held on September 25, 2018, at which she and Beth Crain, a vocational expert, both testified.

        The Administrative Law Judge issued an unfavorable decision on November 28, 2018.
In that decision, he first concluded that Plaintiff met the insured status requirements of the Social
Security Act through December 31, 2020, and also met the non-disability requirements for
disabled widow's benefits, with the prescribed period ending on September 30, 2022.  The ALJ
also found that Plaintiff had not engaged in substantial gainful activity since her alleged onset
date.  Next, the ALJ determined that Plaintiff suffered from severe impairments including
chronic obstructive pulmonary disease and osteoarthritis and allied disorders.  The ALJ further
found that Plaintiff had a number of non-severe impairments (including fibromyalgia) and that
none of her impairments met the criteria for disability set out in the Listing of Impairments.

        According to the ALJ, Plaintiff's impairments limited her to performing work at the light

exertional level.  She had additional limitations in that she could only balance, crouch, kneel, crawl, stoop, and climb ramps, stairs, ladders and scaffolds on an occasional basis, although she could frequently push, pull, reach, handle, finger, and feel bilaterally.  She could push, pull, and operate foot controls with her legs occasionally, and she could not work in environments with extreme temperatures, humidity, fumes, dusts, odors, gases, poor ventilation, and other pulmonary irritants, nor could she work around unprotected heights or machines with mechanical moving parts.  She could not drive company vehicles as well.  Lastly, the ALJ found that Plaintiff would be off task ten percent of the day due to needing to alternate between sitting and standing or due to concentration lapses, and that she would miss one day of work per month.

Moving to the next step of the process, the ALJ determined that Plaintiff could not do any of her past relevant work.  However, based on the testimony of the vocational expert, the ALJ concluded that Plaintiff could do various light jobs such as small parts assembler, inspector and hand packager, and mail clerk.  He also found that these jobs existed in significant numbers in the national economy.  Consequently, he determined that Plaintiff was not under a disability as defined in the Social Security Act.

In her motion for judgment on the pleadings, Plaintiff has raised three issues.  She contends (1) that the Appeals Council improperly rejected the new evidence she submitted to that body; (2) that the ALJ did not properly apply the treating source rule; and (3) that the ALJ did not properly evaluate Plaintiff's fibromyalgia.

## II.  THE KEY EVIDENCE

The Court will begin its review of the record by summarizing Plaintiff's testimony at the administrative hearing.  It will then recap the relevant information contained in the medical records.

Plaintiff first testified that she had been living with her mother, who suffers from Alzheimer's disease, since January of 2016.  She provided basic care to her including cooking and bathing, but someone else did the housecleaning.  Plaintiff said that she stopped working in December of that year when she was fired from a pizza restaurant where she had been a delivery driver.  According to Plaintiff, she was unable to do the job properly.  Before that, she had worked as a server at a several family restaurants and had done food preparation as well.

When asked why she could not work, Plaintiff said that she struggled to do basic activities like showering, dressing, or walking.  She attributed her difficulties to fibromyalgia and COPD.  She had experienced fibromyalgia symptoms since she was in her twenties.  Plaintiff was limited in her ability to climb stairs, lift her legs and arms, and bending over.  Her hands also cramped and she dropped objects all the time.  Recently she had also been having problems with memory and concentration.  She could sit for half an hour before having to change positions, and had a hard time with both standing and walking.  She could lift a gallon of milk but not carry it very far.  Reaching was also difficult and tiring.

Plaintiff also testified about the effects of her COPD.  She slept with a CPAP machine and in a recliner.  Humidity, temperature extremes, and dust all affected her breathing.  She used inhalers on a daily basis.  Lastly, she testified to having symptoms of "fibro fog" which affected her concentration and memory.

The vocational expert, Ms. Crain, characterized Plaintiff's past jobs as delivery driver, which was medium and unskilled, and as server, which was light and semi-skilled.  She was then asked questions about a person with Plaintiff's vocational profile who could do a limited range of light work, and said that with the first set of limitations described, the server job would still be available.  With additional restrictions listed by the ALJ, however, that job would be eliminated, but the person could still do light jobs like small parts assembler, inspector and hand packager, and mail clerk.  She gave numbers for those jobs as they exist in the national economy, and also identified several sedentary jobs that could be performed.  If the person missed work twice per month or were off task more than ten percent of the time, however, she could not be employed.

The relevant medical records show the following.  Plaintiff had a long-term history of evaluation and treatment for COPD and asthma.  At an office visit in 2013, she reported continued difficulties with cough and chest congestion.  The records show she had been taking medications for these conditions for some time.  Also in 2013, a physical examination revealed diffuse tenderness over her shoulders and hips.  The following year, she reported "pain everywhere" and, more specifically, back pain radiating down her right leg.  It was worse in 2015, especially on work days.  During the same time she was being treated for depression and vertigo as well.  At a neurologic consult in 2016, a history of fibromyalgia was indicated, along with findings joint stiffness, joint swelling, neck pain, lower back pain, and muscle aches.  A consultative psychological evaluation done the same year stated that Plaintiff would have mild difficulties performing complex tasks, relating to others, or dealing with stress due to mild adjustment and anxiety disorders.  Fibromyalgia was also listed as a relevant medical condition in that report.

Dr. Schwab performed a consultative internal medical examination on October 14, 2016.  Plaintiff told Dr. Schwab she had had fibromyalgia since 2010 and COPD since 2008 and arthritis symptoms in her knees and ankles since 2009.  She said she cooked several times per week and occasionally did laundry, cleaning, and shopping.  On examination, her gait and stance were normal and she had full range of motion of her cervical and lumbar spines as well as her shoulders, elbows, forearms, and wrists.  She demonstrated eight fibromyalgia trigger points as well as tenderness in the right ankle and knee.  Dr. Schwab diagnosed COPD, tobacco abuse, fibromyalgia, osteoarthritis, sleep apnea, and hypertension, and thought she had only a mild restriction to prolonged walking.  (Tr. 441-44).

Plaintiff's treating physician, Dr. Usen, completed a form on August 16, 2016, stating that Plaintiff was suffering from fibromyalgia and back pain.  He believed that Plaintiff was moderately limited in her ability to walk, stand, sit, lift, carry and use her hands, as well as in her ability to climb stairs.  She was very limited in her ability to push, pull, and bend, and to function

-3-

in a work area at a consistent pace.  (Tr. 593-94).

There was one additional medical record submitted to the Appeals Council following the ALJ's decision, another medical source statement from Dr. Usen which was dated January 2, 2019.  He noted additional diagnoses including depression and back pain and stated that Plaintiff experienced daily bodywide pain and headaches.  Dr. Usen concluded that Plaintiff's anxiety and depression contributed to her disability.  He thought her symptoms would constantly interfere with her attention and concentration but she could do a low stress job.  However, her sitting and standing were limited to fifteen-minute intervals, and in a work day she could sit, stand, and walk for less than two hours each.  She also needed to be able to change positions at will and to take hourly unscheduled breaks.  She could never stoop, bend, crouch, squat, or climb ladders and she would miss more than four days of work per month.  (Tr. 10-14).

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

"[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

-4-

## IV.  DISCUSSION

### A.  Fibromyalgia as a Severe Impairment

The Court will first address Plaintiff's argument that the ALJ erred by determining, at step two of the sequential evaluation process, that her fibromyalgia was not a severe impairment. The ALJ did not devote substantial discussion to this issue, stating only that "[a]t the consultative examination, the claimant had eight trigger points and reported fibromyalgia.... However, the claimant was treated with pain medications and did not have work related limitations because of the fibromyalgia." (Tr. 104).  Plaintiff asserts that this assessment was inadequate, pointing to portions of the record showing that she had a history of fibromyalgia, reported pain to her doctors on a consistent basis, and was treated with both pain medications and fibromyalgia medication trials.  She also complained of fatigue and "fibro fog," and Dr. Usen attributed some of her work-related limitations to her fibromyalgia.  The Commissioner, in turn, argues that the eight trigger points demonstrated at the consultative examination did not satisfy the diagnostic criteria for fibromyalgia, refers to Dr. Schwab's conclusion that Plaintiff had only slight physical limitations, notes that Dr. Usen did not list fibromyalgia as one of Plaintiff's medical conditions in his later treatment notes, and asserts that any error was harmless because the ALJ took any limitations caused by Plaintiff's fibromyalgia into account in reaching his conclusions as to Plaintiff's residual functional capacity.

There are some troubling aspects to the ALJ's discussion of fibromyalgia.  Social Security Ruling 12-2p sets out the criteria which are relevant to a finding that fibromyalgia is a medically determinable impairment, and one of those criteria is documentation of eleven trigger points during an examination.  However, the ALJ specifically found that Plaintiff's fibromyalgia was a medically determinable impairment (Tr. 104), so it is unclear why he commented on the presence of only eight trigger points.  That is a diagnostic criterion and seemingly irrelevant to the question of whether, if a claimant has the medically determinable impairment of fibromyalgia, it qualifies as a severe impairment.  Thus, the first question to be answered here is whether, given the ALJ's finding that Plaintiff does suffer from fibromyalgia, his determination that it did not "cause more than minimal limitations on the claimant's ability to perform basis work activities" - which is the proper legal standard, *see, e.g.,* 20 C.F.R. § 416.920(c) - is supported by substantial evidence.

As noted, apart from his reference to the trigger points detected during the consultative examination, the ALJ's only given reason in support of his determination that Plaintiff's fibromyalgia was not a severe impairment is that she was treated with pain medications.  His additional statement that she did not have work-related impairments due to fibromyalgia is simply a conclusion, not an explanation of why he so concluded.  The fact that an impairment from which a claimant suffers has been treated with pain medication says nothing about its severity, however.  And in the case of fibromyalgia, which is not normally responsive to pain medication, reliance on such a factor is especially problematic.  Given the extent of Plaintiff's testimony about the impact of her fibromyalgia on her physical abilities and her concentration

and memory, and taking Dr. Usen's treatment notes and his opinion as to Plaintiff's functional capacity into account - none of which were mentioned by the ALJ in his discussion of fibromyalgia as a severe impairment - the Court finds that the ALJ's analysis of this issue was inadequate.

The second question to be answered is whether the error is harmless. As this Court has said, "failure to find an impairment severe at step two may be harmless error if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Brenda D. v. Comm'r of Soc. Sec.,* 2021 WL 1856905, at *4 (W.D.N.Y. May 10, 2021), *citing Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. May 2, 2013). Although the Commissioner asserts that this is what occurred in this case, the Court sees it differently.

The ALJ did not find Plaintiff's reports of body aches, pain, and "fibro fog" to be consistent with the evidence, and he may have made that finding because he did not believe that her fibromyalgia caused any functional limitations. He did limit her to frequent, as opposed to constant, pushing, pulling, reaching, handling, fingering, and feeling bilaterally, and to occasional pushing, pulling, and operating foot controls, but there is no medical evidence to support the proposition that these limitations represented the extent of her fibromyalgia symptoms. The ALJ also rejected portions of Dr. Usen's functional capacity opinion as "excessive and not consistent with medical evidence," but since Dr. Usen based that opinion in large part on his diagnosis of fibromyalgia - which he listed as the first medical condition from which Plaintiff suffered, *see* Tr. 593 - the ALJ's analysis of that opinion was likely to have been influenced by his finding that Plaintiff's fibromyalgia was not severe enough to cause any functional limitations. Because the ALJ did not clearly consider the effects of Plaintiff's fibromyalgia in making his step four determination - in fact, he appears to have done just the opposite - the step two error is not harmless, and a remand is required.

## B. The Opinion Evidence

Before evaluating Plaintiff's claim that the Appeals Council improperly disregarded the additional treating source statement from Dr. Usen - which, according to the Appeals Council's decision, "does not show a reasonable probability that it would change the outcome" of the case, Tr. 2 - it is helpful to review the ALJ's decision. That review will also assist the Court in analyzing Plaintiff's claim that the ALJ misapplied the treating source rule.

As will be more fully discussed below, the ALJ found that Plaintiff had only two severe impairments - COPD and "osteoarthritis and allied disorders." His residual functional capacity finding was based largely on the effects of those two impairments, although he added a few additional restrictions as well. In making that finding, the ALJ first determined that Plaintiff's statements concerning her symptoms were not entirely consistent with the medical and other evidence of record, and then considered the opinion evidence of record.

The ALJ gave some weight to Dr. Schwab's consultative opinion and some weight to Dr.

Usen's opinion as well.  As noted above, he found that some portions of the latter opinion were excessive because they were not consistent with the medical evidence, including Dr. Usen's own treatment records, which showed "consistent treatment with no noted limitation...."  (Tr. 109). He also gave some weight to the psychological evaluation indicating few, if any, mental limitations.  In his conclusion, the ALJ pointed out that Plaintiff only took pain medication and had not had any invasive procedures and that her reported memory problems were inconsistent with two psychological evaluations.  (Tr. 109-10).

Starting with the Appeals Council issue, Plaintiff argues that the second opinion from Dr. Usen was both new and material, supporting the latter argument by noting that Dr. Usen specifically stated that the limitations he described had persisted for years and that his second opinion constitutes the most detailed analysis in the record concerning Plaintiff's functional capacity.  Plaintiff further contends that the Appeals Council should not have dismissed this evidence as unlikely to change the outcome of the case, asserting that it was error for the Appeals Council not to have performed a robust review of the evidence under the treating physician rule rather than simply to discount the evidence based on "brief boilerplate language."  *See* Doc. 7, at 20.  She couples this argument with the contention that the ALJ also failed to comply with that rule in analyzing Dr. Usen's first opinion.

The Commissioner has responded to these two arguments in reverse order.  First, defending the ALJ's decision, the Commissioner points out that the ALJ relied on Dr. Usen's notes in assigning only some weight to his opinion, and that the notes "were replete with normal findings."  Doc. 11, at 14.  Given that the ALJ both acknowledged Dr. Usen's long-term treating relationship with Plaintiff and considered the record when evaluating his opinion, the Commissioner concludes that nothing further would be accomplished by a remand for a more thorough articulation of the ALJ's reasoning process.  Turning to the Appeals Council's action, the Commissioner argues that the later opinion from Dr. Usen was based on the same evidence as the earlier opinion, and that the ALJ's rationale for discounting the latter applies to the former as well.  Lastly, the Commissioner suggests that the evidence from Dr. Usen was not technically "new" because Plaintiff offered no explanation for not procuring such an opinion prior to the date of the ALJ's decision.

Because the Court is ordering a remand based on the ALJ's step two error, an extended discussion of these issues is not strictly necessary.  On remand, the ALJ must reinterpret Dr. Usen's opinion in light of the need to reconsider the issue of fibromyalgia, however, and that will give the ALJ an opportunity to consider the second opinion as well as the first.  The ALJ should be mindful, of course, that a treating source's opinion must be evaluated properly, as explained in *Walton v. Comm'r of Soc. Sec.*, 2020 WL 3964255, at *3 (W.D.N.Y. July 13, 2020), where the Court stated:

> When assigning less than "controlling weight" to a treating physician's opinion, the ALJ must "explicitly consider" the four factors announced in *Burgess v. Astrue,* 537 F.3d 117 (2d Cir. 2008). *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir.

2019) (internal quotation marks omitted). Those factors, referred to as "the *Burgess* factors," are "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella*, 925 F.3d at 95-96 (citation omitted); 20 C.F.R. §404.1527(c)(2).

## V.  CONCLUSION AND ORDER

For the reasons set forth in this Opinion and Order, the Court **GRANT** Plaintiff's motion (Doc. 7), **DENIES** the Commissioner's motion, and **REMANDS** this case to the Commissioner pursuant to 42 U.S.C. §405(g), sentence four.

/s/ **Terence P. Kemp**
**United States Magistrate Judge**